## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

BARRY WAYNE RAYNER                                                               PLAINTIFF

v.                                                       CIVIL ACTION NO. 3:09-CV-P488-M

CITY OF LOUISVILLE METRO et al.                               DEFENDANTS

### MEMORANDUM OPINION

Plaintiff, Barry Wayne Rayner, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).[1] For the reasons set forth below, the action will be dismissed.

### I. SUMMARY OF CLAIMS

Plaintiff sues in their individual and official capacities Mayor Jerry Abramson; Governor Steve Beshear; State Treasurer Todd Hollenbach; Kentucky Senate President David L. Williams; Jonathon Miller, Secretary, Kentucky Finance and Administration Cabinet; Jody Richards, Speaker, Kentucky House of Representatives; Mark Bolton, Director of Louisville Metro Department of Corrections (LMDC); state-court Judge Barry Willett; Ed Monahan, Department of Public Advocacy (DPA); Commonwealth's Attorney R. David Stengel; Chief Public Defender Daniel Goyette; John Meyers, Executive Director of the Kentucky Bar Association (KBA); Kentucky Attorney General Jack Conway; and state-court Judge Rodney Burress. He also sues the City of Louisville. He states that he is an indigent pretrial detainee, who is being prosecuted

---

[1] Pursuant to 28 U.S.C. § 1915A, "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Thus, even though Plaintiff paid the $350.00 filing fee, the Court is still required to screen his complaint before service on Defendants. *Id.*

in four Kentucky counties. He alleges that due to the ineffective and incompetent representation offered by public defenders he has had to attempt his own defense in the criminal cases against him. He states that "in each county [he] is appointed assistant or standby counsel from the public defender's office by the Kentucky courts to either represent him or to assist [him] in the preparation and filing of meaningful legal papers." He complains that LMDC only offers an inmate request form which limits inmates to three requests for copies of statutes, case law, or other legal material. He states that Judge Willett ordered LMDC to provide Plaintiff with reasonable access to legal research with which to prepare legal papers and that Judge Willett added that the Louisville Metro inmate library request appears to be a reasonable way of allowing access to legal materials.

Plaintiff's complaint is replete with conclusory allegations as to public defenders' competency, *e.g.*, "they are incapable of providing competent and ethical representation due to being overburdened and under paid." He complains in a conclusory fashion that his many cases have been delayed in order to wear Plaintiff down into accepting a plea agreement. He alleges that the underfunding of DPA is tantamount to being denied counsel, yet Defendant Conway was not deterred from prosecuting indigent defendants. He asserts that Defendant City of Louisville and Defendant Bolton's actions have resulted in a grossly deficient system whereby inmates who are "forced" to represent themselves must use a legal request form that limits the inmate to three copies. He alleges that Defendants Beshear, Hollenbach, Miller, Williams, and Richards carry on the chronically negligent practice of inadequately funding public defenders which works to deny Plaintiff his right to effective counsel. He also alleges state-law claims of intentional and negligent infliction of emotional distress. As relief, Plaintiff wants monetary damages and

2

declaratory and injunctive relief.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A.  *Claims against state-court judges*

Plaintiff's claims against the state-court judges must be dismissed. His claims for monetary damages against the state judges are barred by the doctrine of absolute judicial immunity, under which judges are immune from monetary liability for decisions made within the scope of their official functions. *See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967); *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).

Similarly, Plaintiff's claims for injunctive relief against these Defendants also do not succeed. Section 1983 provides in pertinent part that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not

be granted unless a declaratory decree was violated or declaratory relief was unavailable." Plaintiff does not allege any facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable. Therefore, Plaintiff's claims against Defendants Willett and Burress under § 1983 for injunctive relief also fails to state a claim. *See Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006).

B.  *Claims against DPA attorneys*

It is firmly established that a defense attorney, regardless of whether he is a public defender or private attorney, is not a state actor for purposes of § 1983. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."). Thus, Plaintiff fails to state a claim under § 1983 against Defendants Monahan and Goyette regarding any performance of a traditional lawyer function.

The crux of Plaintiff's complaints about DPA counsel is that they underfunded. He does not argue that they are underfunded due to the allocation of resources within DPA by either Defendant Monahan or Defendant Goyette. Instead, he argues that the underfunding is a result of the state legislature's and Governor's actions. His complaint refers to an April 16, 2009, letter from the DPA to Governor Beshear in which, according to Plaintiff, DPA admitted to not being able to provide ethically competent representation due to lack of funding. Plaintiff attaches a copy of that letter to one of his motions (DN 8). That letter states in pertinent part, "DPA continues to face a legal and practical dilemma it does not have the ability to resolve on its own,

4

as it has no control over its caseload. Others decide whom to arrest and prosecute. Courts decide whom to appoint DPA to represent." His complaint also references a 2008 lawsuit by and for Kentucky DPA attorneys regarding their lack of funding from the legislature. Thus, this case is distinguishable from *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007), in which the Sixth Circuit held that the Public Defender could be a § 1983 state actor where the allegations involved the Public Defender's administrative acts to allocate resources in such a way as to violate the Constitution. Here, Plaintiff argues that the legislature has failed to provide appropriate funding, thus leaving DPA without adequate resources. Plaintiff's claims against Defendants Monahan and Goyette will be dismissed for failure to state a claim.

C.      *Claims against Defendant Meyers, Executive Director of the KBA*

According to the complaint, Defendant Meyers is the Executive Director of the Kentucky Bar Association. However, the United States Constitution does not apply to the conduct of private persons; it applies to conduct by the government. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620 (1991). A private citizen is not liable for an alleged constitutional violation unless: (1) "the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority"; and (2) "the private party charged with the deprivation could be described in all fairness as a state actor." *Id.* "The Kentucky Bar Association is a private actor which does not derive its authority from the state, and it is therefore not subject to a § 1983 claim." *Jordan v. Kentucky*, No. 3:09CV-424-M, 2009 WL 2163113, at *4 (W.D. Ky. July 16, 2009) (*citing*, *inter alia*, *Bier v. Fleming*, 717 F.2d 308, 311 (6th Cir. 1983); *Gerena v. Puerto Rico Legal Servs., Inc.*, 697 F.2d 447, 451-52 (1st Cir. 1982)). For these reasons, Plaintiff's claims against Defendant Meyers will be dismissed for failure to

state a claim upon which relief may be granted.

D.     *Claims against prosecuting attorneys*

Plaintiff's claims against the prosecutorial defendants, Defendants Stengel and Conway, are also barred. In broad terms, Plaintiff's claims against the prosecutorial defendants relate to their conduct in their role as advocates. To the extent the prosecutorial defendants were acting in their roles as advocates, *i.e.*, initiating and pursuing a criminal prosecution and presenting the Commonwealth of Kentucky's case, they enjoy absolute prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976); *see also Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (holding that prosecutors were absolutely immune from claim alleging that they conspired to knowingly bring false charges despite claims of failure to investigate facts and alleged commission of perjury before the grand jury). Moreover, federal courts have no general power to compel action by state officers in the performance of their duties. *Moye v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973) (per curiam); *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir. 1970). Therefore, Plaintiff's claims against Defendants Stengel and Conway will be dismissed for failure to state a claim.

E.     *Claims against executive and legislative branch officials*

Members of the executive branch while acting in a legislative capacity and legislative branch officials are immune from lawsuits which attempt to impose any form of liability, including claims for declaratory relief, damages, or retrospective or prospective injunctive relief. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (holding legislators at all levels of government are entitled to immunity for "legislative activities"); *Tenney v. Brandhove*, 341 U.S. 367 (1951); *Alia v. Mich. Supreme Ct.*, 906 F.2d 1100, 1102 (6th Cir. 1990) (holding injunctive

6

relief against Justices of Michigan Supreme Court for actions taken in their legislative capacity was barred by legislative immunity); *Haskell v. Washington Twp.*, 864 F.2d 1266, 1277 (6th Cir. 1988) ("[S]tate legislators are . . . entitled to absolute immunity from liability for actions taken in their legislative capacity."). Therefore, the claims against Defendants Beshear, Hollenbach, Williams, Miller, and Richards must be dismissed.

F.     *Claims against Louisville Metro Defendants*

Plaintiff's remaining claims are those against the City of Louisville, Mayor Abramson, and LMDC Director Bolton that the request form that he must use to obtain copies of legal materials is interfering with his ability to represent himself in his multiple criminal cases. Plaintiff's argument hinges on the alleged necessity for him to represent himself in his criminal actions because appointed counsel are so overworked as to be the same as not having counsel at all, thereby violating his due-process right to effective counsel. However, his allegations that appointed counsel would be ineffective are conclusory. The fact remains that, according to Plaintiff's complaint, he has been offered appointed counsel.[2]

"[A] prisoner's constitutionally-guaranteed right of access to the courts [is] protected when a state provides that prisoner with either the legal tools necessary to defend himself, e.g., a state-provided law library, *or the assistance of legally trained personnel*." *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983) (per curiam) (emphasis added)); *see also Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991) (holding no constitutional violation where jail provided legal

---

[2] According to paragraph 26 of his complaint, "All the counties in question have given the Plaintiff counsel from the public defender's office in Kentucky state courts to handle the Plaintiff's case, except Bullitt County where the Plaintiff is pro se and been appointed co/counsel . . . ."

7

material upon request and inmate was represented by appointed counsel during his criminal case since constitution only requires adequate law library or appointed counsel). Thus, where a pretrial detainee is represented by counsel, a jail cannot be said to have interfered with his right of access to the courts regardless of the nature of its law library, as the access right is adequately protected by the inmate's legal counsel. *Leveye v. Metro. Pub. Defender's Office*, 73 F. App'x 792, 794 (6th Cir. 2003). And the choice of whether to offer appointed counsel or an adequate library is the state's to make. In *Holt*, the Sixth Circuit held that the fact that the prisoner did not accept appointed counsel until the day before trial was immaterial. *Holt*, 702 F.2d at 640. "The alternative avenues open to state authorities to protect a prisoner's right of access to the courts are precisely that – alternatives. The choice between alternatives lies with the state. A prisoner who chooses not to avail himself of the alternative provided has no basis-constitutional or otherwise-for complaint." *Id.* at 640-41. Thus, the fact that Plaintiff has been offered the services of a public defender in his cases adequately protects his right of access to the courts.

G. *State-law claims*

Because Plaintiff's federal-law claims will be dismissed, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3). Those claims will be dismissed without prejudice.

## III. CONCLUSION

For the foregoing reasons, by separate Order, the Court will dismiss federal Plaintiff's claims with prejudice and will dismiss his state-law claims without prejudice.

Date:


cc: Plaintiff, *pro se*
 Defendants
 Jefferson County Attorney
4414.009